IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>KADONTA MULDREW,<br><br>        Defendant. | 8:24-CR-104<br><br>TENTATIVE FINDINGS REGARDING DEFENDANT'S OBJECTIONS TO SECOND REVISED PRESENTENCE INVESTIGATION REPORT |

On August 18, 2025, defendant Kadonta Muldrew pleaded guilty to the following three counts of the Indictment: Count I, conspiracy to distribute and possess with the intent to distribute 40 grams or more of fentanyl; Count II, possession with the intent to distribute 40 grams or more of fentanyl; and Count III, being a felon in possession of a firearm. Filing 76 (Text Minute Entry). The defendant's sentencing hearing is set for November 19, 2025. Filing 77. The defendant has objected to 14 paragraphs in the Second Revised Presentence Investigation Report.[1] Filing 144. As is the Court's practice, the Court will address the defendant's objections during the sentencing hearing before pronouncing the sentence in this case. However, due to the amount and nature of those objections, the Court issues these tentative findings prior to sentencing. Although the Court's

---

[1] The defendant first filed his objections to the original presentence investigation report. Filing 138. After the defendant filed those objections, a revised presentence investigation report was submitted. The defendant then filed a Written Statement of Position on the revised presentence investigation report that struck some of his previously filed objections but largely reiterated his original objections as they applied to the revised presentence investigation report. Filing 139. Then, the Second Revised Presentence Investigation report was filed, and the defendant filed a Second Written Statement of Position addressing the Second Revised Presentence Investigation Report. Filing 144. Because the Second Revised Presentence Investigation Report is the operative report at sentencing, the Court will refer to the defendant's objections as they are set forth in his Second Written Statement of Position.

1

tentative findings address issues related to the United States Sentencing Guidelines, the Court notes that, pursuant to *United States v. Booker*, 543 U.S. 220 (2005), those Guidelines are advisory.

## I. BACKGROUND

The defendant objects to paragraphs 33, 39, 41, 44, 48, 50, 51, 61, 63, 67, 81, 82, 88 and 124[2] of the Second Revised Presentence Investigation Report (Second Revised PSR). Filing 144. The defendant has not filed a brief in support of his objections. Instead, he has provided one to three sentences explaining the grounds for each objection. *See generally* Filing 144. The Government has filed a sentencing memorandum that responds to some of the defendant's objections.[3] Filing 148. The Government's position is that all of the defendant's objections should be overruled and that "[t]he probation officer's rationale contained in the [Second Revised PSR's] addendum is correct." Filing 148 at 4. The Court will address the defendant's objections below, but first, the Court will sort the defendant's objections into four categories to facilitate analysis. The Court will refer to these same four categories during the defendant's sentencing hearing.

The first category contains the defendant's objections to the drug quantity attributed to him. Within that category, the Court will consider the defendant's objections to paragraphs 39, 41, and 44. The second category involves the defendant's objections to his offense level calculations in paragraphs 48, 50, 51, 61, 63, and 67. In the third category, the Court will address the defendant's objections to paragraphs 81 and 82 dealing with the defendant's criminal history computation.

---

[2] The defendant's Second Written Statement of Position objects to paragraph 120, Filing 144 at 2, but it appears that the defendant means to object to paragraph 124. Paragraph 120 of the Second Revised PSR contains information from a collateral interview with the defendant's mother, while paragraph 124 of the Second Revised PSR describes the defendant's employment record from November 2020 to May 2024, which is consistent with the topic of the defendant's objection. Second Revised PSR at 23–24; Filing 144 at 2.

[3] The Government's Sentencing Memorandum also responds to the defendant's Motion for Downward Departure or Variance, Filing 140. As is its practice, the Court will address that motion during the sentencing hearing.

Finally, the Court will consider the defendant's remaining objections to paragraphs 33, 88, and 124, none of which affect the defendant's Guidelines calculations.

## II. ANALYSIS

### A. Category One: Attributed Drug Quantity

The Court begins with the defendant's objections to the quantity of drugs attributed to him. Paragraphs 39, 41, and 44 of the Second Revised PSR outline three separate controlled buys conducted by law enforcement officers against individuals other than the defendant. Second Revised PSR at 8–9. All three controlled buys involved fentanyl pills, and the fentanyl pills received during all three controlled buys were tested and weighed. Second Revised PSR at 8–9. The defendant objects to "the drug quantity being attributed to him" in paragraphs 39 and 41, as that drug quantity "raises double counting issues due to money being converted to drug quantity." Filing 144 at 1. The defendant objects to paragraph 44, alleging that it contains "[h]earsay by Latasha Collier which is not reliable" and that it raises the "issue of double counting the controlled substance when cash is being converted to drug quantities." Filing 144 at 1.

The defendant's overarching concern with paragraphs 39, 41, and 44 is that the quantity of drugs identified in each paragraph was "double counted" against the defendant because the money received in exchange for those drugs was presumably part of the cash recovered during the various searches referenced throughout the Second Revised PSR, and because that cash was itself converted into drug weight in paragraph 51. This concern appears to be unfounded. Paragraphs 39, 41, and 44 all contain the following language: "To avoid double counting, the amount of fentanyl from this controlled buy is not attributed to the defendant, as the United States currency that was found during the residence searches is converted to drug weight and may contain the cash obtained from this controlled buy." Second Revised PSR at 8–9. Thus, the Court's tentative finding is that there are no

double counting issues in paragraphs 39, 41, and 44, and the defendant's objections to those paragraphs should be overruled. To the extent that the defendant also objects to paragraph 44 because it contains hearsay, the Court tentatively finds that the objection should be overruled on those grounds as well. "At sentencing, a district court 'may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, including hearsay and double hearsay,' so long as that information has 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Campos*, 79 F.4th 903, 916 (8th Cir. 2023) (quoting *United States v. Harris*, 44 F.4th 819, 822 (8th Cir. 2022)). "The reliability of hearsay evidence can depend on 'the consistency of the hearsay testimony, the timing and nature of the declarant's statements, and the witness's impressions of the declarant's demeanor, as well as other corroborating evidence.'" *Id.* (quoting *United States v. Sheridan*, 859 F.3d 579, 583 (8th Cir. 2017)). The Court tentatively finds that the statement of Latasha Collier contained in paragraph 44 possesses sufficient indicia of reliability to be considered by the Court. Collier made that statement during a post-Miranda interview, and her statement that the defendant supplied codefendant Jeron Morris with fentanyl pills which Morris then sold is corroborated by the defendant's plea of guilty to conspiring with Morris to distribute fentanyl. Filing 79 (Petition to Enter a Plea of Guilty).

### B. Category Two: Offense Level Calculations

The Court turns to the second category of the defendant's objections. Like the first category, some of the defendant's objections here deal with the quantity of drugs attributed to him. Unlike the first category, however, the drug quantities challenged under this second category actually were attributed to the defendant, meaning those quantities contributed to the total drug weight used to calculate the defendant's base offense level under U.S.S.G. § 2D1.1. The defendant objects to that calculated base offense level, and he also objects to the adjusted offense level. The second category

4

of objections contains the defendant's objections to paragraphs 48, 50, 51, 61, 63, and 67. The Court will consider each of those objections in order.

   1. *Paragraph 48*

Paragraph 48 of the Second Revised PSR describes the search of a residence belonging to the defendant, 1405 Sherwood Avenue, Omaha, Nebraska, 68110, as well as the search of Jeron Morris, the codefendant in this case. Second Revised PSR at 9. Multiple items were located during those searches, including cash and various drugs. Second Revised PSR at 9. Fentanyl pills were recovered during the search of the residence, and those pills were tested and weighed. Second Revised PSR at 9. Paragraph 48 attributes to the defendant 101.9 grams of fentanyl/4-ANPP/meta-fluorofentanyl and 8.955 grams of fentanyl/meta-fluorofentanyl. Second Revised PSR at 9. The defendant's concern with paragraph 48 is that the "fentanyl was all in Co-Defendant, Morris'[s] bedroom and pants."[4] Filing 144 at 1. In response, both the Government and the probation officer point out that under U.S.S.G. § 1B1.3, the "relevant conduct" of a defendant includes "all acts and omissions of others that were . . . (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. 1B1.3(a)(1)(B); Second Revised PSR at 33; Filing 148 at 4–5. The Government argues that codefendant Morris's "possession of fentanyl pills qualifies as relevant conduct based on the unobjected-to facts in the [Second Revised PSR]." Filing 148 at 4–5.

The Eighth Circuit has established that "[t]he government bears the burden of proving drug quantity by a preponderance of the evidence." *United States v. Johnson*, 75 F.4th 833, 846 (8th Cir.

---

[4] The defendant's objection to paragraph 48 also references other drugs and "items of contraband" located during the search of the 1405 Sherwood Avenue residence, but those drugs were not included in the total drug weight used to calculate the defendant's base offense level.

2023) (internal quotation marks and citation omitted). "For the purpose of calculating drug quantity in a drug conspiracy case, the district court may consider amounts from drug transactions in which the defendant was not directly involved if those dealings were part of the same course of conduct or scheme." *United States v. Escobar*, 909 F.3d 228, 246–47 (8th Cir. 2018) (quoting *United States v. King*, 898 F.3d 797, 809 (8th Cir. 2018)). "This includes all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." *Id.* (quoting same). "The court's approximation may be 'based on imprecise evidence so long as the record reflects a basis for the court's decision.'" *Johnson*, 75 F.4th at 846 (quoting *United States v. Yellow Horse*, 774 F.3d 493, 497 (8th Cir. 2014)). Furthermore, "[a] fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant." *United States v. Trevino*, 829 F.3d 668, 675 (8th Cir. 2016) (quoting *United States v. Abrica-Sanchez,* 808 F.3d 330, 334 (8th Cir. 2015)).

Although the Court will ultimately resolve this issue on the evidence at sentencing, the Court's tentative finding is that the drug quantities identified in paragraph 48 should be attributed to the defendant as relevant conduct. Both the defendant and Morris belonged to a conspiracy to distribute fentanyl, as evidenced by the defendant's guilty plea to Count I of the Indictment. Filing 79; Filing 1. Unobjected-to portions of the Second Revised PSR indicate that the defendant was aware that Morris lived at the 1405 Sherwood Avenue residence, as the defendant paid the utilities for the residence and maintained a room at the house. Second Revised PSR at 7 (paragraphs 29 and 33[5]). The defendant himself stored drugs and drug-trafficking items at the residence. Second Revised PSR at 7 (paragraph 29). Based on this evidence, the Court tentatively finds that the

---

[5] As discussed below, the defendant's objection to paragraph 33 is that he "was moving clothes, etc. after [a] burglary at the residence." Filing 144 at 1. The defendant does not object to the first sentence of paragraph 33, which states that "Muldrew paid the utilities at the stash house and visited it frequently." Second Revised PSR at 7.

amounts of fentanyl located at the 1405 Sherwood Avenue residence are properly attributed to the defendant because even if the defendant was not directly involved with that fentanyl, the preponderance of the evidence suggests that it was part of the same course of conduct or scheme that the defendant pleaded guilty to. This tentative finding is further supported by Latasha Collier's post-Miranda statement that the defendant supplied Morris with fentanyl pills to sell—a statement that the Court has already tentatively found to possess sufficient indicia of reliability to support its probable accuracy. *See Campos*, 79 F.4th at 916. The Court therefore further tentatively finds that the defendant's objection to paragraph 48 should be overruled.

2. Paragraph 50

Paragraph 50 attributes to the defendant 234.439 grams of fentanyl analogue. Second Revised PSR at 10. That amount of fentanyl analogue is derived from the drug quantities identified in paragraphs 47, 48, and 49. Second Revised PSR at 9–10. Specifically, paragraph 47 attributes to the defendant 24.219 grams of fentanyl/4-ANPP/para-fluorofentanyl, paragraph 48 attributes to him 101.9 grams of fentanyl/4-ANPP/meta-fluorofentanyl and 8.955 grams of fentanyl/meta-fluorofentanyl, and paragraph 49 attributes to him 99.365 grams of fentanyl/4-ANPP/meta-fluorofentanyl. Second Revised PSR at 9–10. The defendant's objection to paragraph 50 is an objection "to the conversion to fentanyl analogue." Filing 144 at 2. The defendant argues that he "was indicted for fentanyl, a schedule II drug," while "[f]entanyl analogue is a schedule I narcotic."

The Court's tentative finding is that this objection is without merit. Under the Guidelines, "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." *United States v. Maxwell*, 61 F.4th 549, 560 (8th Cir. 2023) (quoting U.S.S.G. § 2D1.1, cmt. n.5 (citing U.S.S.G. § 1B1.3(a)(2))). The distinction between the drug

7

charged—fentanyl—and the drug used to calculate the defendant's base offense level—fentanyl analogue— is therefore immaterial.

   3. *Paragraphs 51 and 61*

Paragraph 51 converts $130,595[6] in United States currency to 832.15 grams of fentanyl analogue, attributing that amount of fentanyl analogue to the defendant along with the 234.439 grams of fentanyl analogue discussed in paragraph 50 for a total drug weight of 1,066.589 grams (1.066 kilograms) of fentanyl analogue. Second Revised PSR at 10. Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(3), this total drug weight is then used to calculate a base offense level of 34, which is reflected in paragraph 61. Second Revised PSR at 10–11. The defendant objects to paragraph 51's conversion of cash to drug weight, arguing that "[d]iscovery shows law enforcement began watching the Defendant in January 2024 and the Defendant did not get fentanyl until February 2024," so the converted cash "was not exclusively from fentanyl sales." Filing 144 at 2. The defendant objects to the base offense level reflected in paragraph 61 "for the reasons stated in objection to Paragraph 51." Filing 144 at 2.

"[I]n order to accurately reflect the scale of drug trafficking activity, the Guidelines authorize the district court to convert seized money into a quantity of drugs." *United States v. Grays*, 638 F.3d 569, 571–72 (8th Cir. 2011) (internal quotation marks and citation omitted); *see also* U.S.S.G. § 2D1.1, cmt. n.5 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."). "The court may

---

[6] Paragraph 51 states that $135,995 in United States currency was found in the defendant's possession. Second Revised PSR at 10. This cash was located during searches of the defendant's person, residences, and storage unit. Second Revised PSR at 9–10 ($11,301 in paragraph 47; $5,694 in paragraph 48; and $119,000 in paragraph 49). Rather than converting all $135,995 to drug weight, the Second Revised PSR subtracts $5,400 from that total to account for the $5,400 the defendant received in exchange for the fentanyl pills he sold during the four controlled buys outlined in paragraphs 42, 43, 45, 46. Second Revised PSR at 10.

8

make a specific numeric determination of quantity based on imprecise evidence." *United States v. Sicaros-Quintero*, 557 F.3d 579, 582 (8th Cir. 2009) (internal quotation marks and citation omitted). A court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *Id.* (internal quotation marks omitted) (quoting U.S.S.G. § 6A1.3(a)).

Because the Government has the burden to prove drug quantity and base offense level by a preponderance of the evidence, the Court will ultimately resolve this issue on the evidence at sentencing. *United States v. Poor Bear*, 359 F.3d 1038, 1041 (8th Cir. 2004) ("If the defendant objects to any of the factual allegations contained therein on an issue on which the government has the burden of proof, such as the base offense level and any enhancing factors, the government must present evidence at the sentencing hearing to prove the existence of the disputed facts."). However, based on the unobjected-to facts in the Second Revised PSR, the Court tentatively finds that the money seized during searches of the defendant's person, his residences, and his storage unit should be converted to drug weight to more accurately reflect the scale of the defendant's drug trafficking activity, and that the defendant's objection to paragraph 51 should be overruled.

Between February and May of 2024, the defendant sold just under 400 fentanyl pills during four controlled buys for a total of $5,400. Second Revised PSR at 8–9 (72 pills for $1,000 in paragraph 42; 65 pills for $1,000 in paragraph 43; 81 pills for $1,000 in paragraph 45; and 202 pills for $2,400 in paragraph 46). The evidence supports a finding that the scale of the defendant's drug trafficking was much larger than those four controlled buys. Although the defendant argues that he "did not get fentanyl until February 2024," he has pleaded guilty to participating in a conspiracy to distribute fentanyl beginning on or about January 3, 2024, and continuing to on or about May 17,

2024. Filing 79; Filing 1. Unobjected-to portions of the Second Revised PSR show that the defendant was distributing fentanyl to other fentanyl dealers as early as January 2024 and that he was still discussing the distribution of fentanyl with other dealers in April 2024. Second Revised PSR at 8 (paragraph 40), 6 (paragraph 25). Furthermore, law enforcement officers located more than one thousand fentanyl pills and $135,995 in cash during searches of the defendant's property, even though the defendant was admittedly unemployed in the years leading up to his arrest.[7] In light of this evidence, the Court tentatively finds by a preponderance of the evidence that the cash located during searches of the defendant's property was drug proceeds and should be converted to drug weight to more accurately reflect the scale of his drug trafficking activity. The Court also tentatively finds that the conversion rate of $156.94 per gram—based on the highest pricing from the defendant's controlled buys reflected in the unobjected-to portions of the Second Revised PSR—is appropriate. *See United States v. Roach*, 164 F.3d 403, 413–14 (8th Cir. 1998) ("The court may make a specific numeric determination of quantity based on imprecise evidence, so long as the record reflects a basis for the court's decision." (internal quotation marks and citations omitted)).

Based on the Court's tentative findings, above, that the defendant's objections to paragraphs 48 and 50 should be overruled and based on the Court's tentative finding here that the defendant's objection to paragraph 51 should also be overruled, the Court further tentatively finds that the calculated base offense level of 34 is correct based on a total drug weight of 1.066 kilograms of fentanyl analogue. *See* U.S.S.G. § 2D1.1(c)(3) (assigning a base offense level of 34 when the

---

[7] As the Court discusses in more detail below, the defendant does object to paragraph 124, the paragraph outlining his employment history immediately preceding his arrest. However, the defendant's objection does not challenge the fact that he was unemployed in the years prior to his arrest. Instead, the defendant admits that he "did not work in 2022 and 2023." Filing 144 at 2. Neither the Second Revised PSR nor the defendant's objection specifically states the defendant's employment status during the first five months of 2024. Second Revised PSR at 24; Filing 144 at 2.

defendant is attributed "[a]t least 1 KG but less than 3 KG of a Fentanyl Analogue"). Accordingly, the Court also tentatively finds that the defendant's objection to paragraph 61 should be overruled, and the base offense level should remain 34.

   4. *Paragraphs 63 and 67*

Paragraph 63 applies a two-level increase to the defendant's offense level pursuant to U.S.S.G. § 2D1.1(b)(12) on the grounds that the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance. Second Revised PSR at 11–12. The defendant objects to paragraph 63. Filing 144 at 2. The defendant also objects to paragraph 67, which reflects an adjusted offense level of 38 after adding to the defendant's base offense level of 34 the two-level enhancement from paragraph 63 and an unobjected-to two-level enhancement from paragraph 62. Filing 144 at 2; Second Revised PSR at 11–12.

"The government bears the burden of providing 'the facts necessary to establish a sentencing enhancement' by a preponderance of the evidence." *Campos*, 79 F.4th at 917–18 (quoting *United States v. Guzman*, 926 F.3d 991, 1000 (8th Cir. 2019)). The Court will ultimately resolve this issue on the evidence at sentencing, but the Court does tentatively find that the two-level enhancement in paragraph 63 should be applied. Section 2D1.1(b)(12) of the Guidelines provides, "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by **2** levels." U.S.S.G. § 2D1.1(b)(12) (emphasis in the original). Paragraph 54 of the Second Revised PSR—which the defendant has not objected to—indicates that the "defendant maintained three residences and a storage unit that were found to contain a large amount of controlled substances, distribution tools, and United States Currency." Second Revised PSR at 10. The defendant also has not objected to paragraph 29, which states that "a room associated with Muldrew" at the "stash house" contained "marijuana, a money counter, and $3,000 cash." Second

11

Revised PSR at 7. Paragraphs 30 and 32, two more unobjected-to paragraphs, reveal that the defendant stored marijuana and approximately 963 fentanyl pills at his mother's residence. Second Revised PSR at 7. Taking these unobjected-to facts together, the Court tentatively finds by a preponderance of the evidence that a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) is appropriate and the defendant's objections to paragraphs 63 and 67 should be overruled. *Trevino*, 829 F.3d at 675 ("A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant." (internal quotation marks and citation omitted)).

### C. Category Three: Criminal History Computation

In his third category of objections, the defendant raises objections to his criminal history computation by challenging paragraphs 81 and 82 of the Second Revised PSR. Paragraph 81 assigns the defendant 3 criminal history points for a drug trafficking conviction in case number CR14-1830 in the Douglas County District Court, Omaha, Nebraska. Second Revised PSR at 16–17. Related to that case, the defendant was sentenced to 3 years of probation in 2015. Second Revised PSR at 16. On August 4, 2016, his probation was revoked, and he was sentenced to 3 to 6 years of imprisonment. Second Revised PSR at 16. Paragraph 82 assigns the defendant 3 criminal history points for a 2016 conviction for attempted possession of a deadly weapon by a prohibited person. Second Revised PSR at 17–18. That conviction occurred in case number CR15-2998 in the Douglas County District Court, Omaha, Nebraska, and on August 4, 2016, the defendant was sentenced to 4 to 7 years of imprisonment to be served consecutive to his sentence in CR14-1830. Second Revised PSR at 17. The defendant objects to paragraphs 81 and 82, arguing that the convictions "should be counted as one sentence for a total of 3 points," instead of two sentences for a total of 6 criminal history points. Filing 144 at 2.

Section 4A1.2(a)(2) of the Guidelines provides that for the purpose of computing criminal history, "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2(a)(2). "If there is no intervening arrest, prior sentences are counted separate unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." *Id.* Here, it is clear from the Second Revised PSR that the defendant was sentenced in CR14-1830 and CR15-2998 on the same day: August 4, 2016. Second Revised PSR at 16–17. Despite this fact, it is the Court's tentative finding that those sentences should be counted separately because, as the probation officer points out, those sentences were imposed for offenses that were separated by an intervening arrest. Second Revised PSR at 34. Although the defendant was sentenced in both cases on the same day, he was arrested for the CR14-1830 drug crime in May 2014, well before he committed the CR15-2998 firearm offense in October 2015. *See United States v. Harvey*, 617 Fed.Appx. 592, 594 (8th Cir. 2015) (unpublished) (per curiam) (holding that an intervening arrest separated a 2002 assault from a 2004 drug offense—even though the court revoked the defendant's probation for the 2002 assault after he committed the 2004 drug offense and even though the court imposed concurrent sentences for the 2002 probation revocation and the 2004 drug offense—because "[p]olice arrested [the defendant] for the 2002 assault long before he committed the relevant drug offense in late 2004"). Accordingly, the Court tentatively finds that the defendant's objections to paragraphs 81 and 82 should be overruled.

### D. Category Four: Remaining Objections

Finally, the Court turns to the fourth category of the defendant's objections. This category contains the defendant's remaining objections to paragraphs 33, 88, and 124 of the Second Revised

13

PSR. Paragraph 33 is part of the Government's version of events and states in full: "Muldrew paid the utilities at the stash house and visited it frequently. Surveillance officers noticed Muldrew carrying duffel bags, a tote, and a trash bag in and out of the house." Second Revised PSR at 7. The defendant objects to the second sentence of this paragraph on the grounds that he "was moving clothes, etc. after [a] burglary at the residence. Morris moved in thereafter." Filing 144 at 1. Paragraph 88 states that "[t]he Omaha Police Department identifies Kadonta Muldrew as an active member of the Omaha South Family Bloods gang." Second Revised PSR at 19. The defendant objects that "he is not an active gang member." Filing 144 at 2. Finally, paragraph 124 describes the defendant's employment record from November of 2020 to May 17, 2024, as follows:

> The defendant was unemployed and completing odd jobs under the table such as lawn mowing and snow removal. He was collecting unemployment benefits and stimulus checks during this time. The defendant also suffered a concussion and neck injury in an automobile accident in 2022, which contributed to his unemployment.

Second Revised PSR at 24. The defendant objects to this characterization of his employment history, arguing instead that he "was laid off in 2021 due to Covid and received unemployment benefits, then stimulus checks." Filing 144 at 2. He explains that he "sold dinners and did snow removal" and "did not work in 2022 and 2023 after suffering a concussion and neck injury in an auto accident." Filing 144 at 2. None of these remaining objections affect the defendant's Guideline calculations.

Because the Government bears the burden of proving these facts by a preponderance of the evidence, *Poor Bear*, 359 F.3d at 1041, the Court will resolve these objections on the evidence at sentencing.

## III. CONCLUSION

The parties will have the opportunity to make further arguments at the defendant's sentencing hearing, and the Court will rule on the defendant's objections at that time. The Court's tentative findings set forth in this order should guide the parties' arguments at sentencing.

Dated this 18th day of November, 2025.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge